PALMER PUBLISHING COMPANY V. H. G. SMITH.

No. 7168.   Decided October 20, 1937.
Rehearing overruled December 1, 1937.
(109 S. W., 2d Series, 158.)

*Renfro & McCombs* and *Wm. Andress, Jr.,* all of Dallas, for plaintiff in error.

The approval of warrants by a county superintendent is a ministerial act, in which he has no right of discretion, and mandamus will lie to compel his performing such act, and it is not necessary to appeal through the school authorities as a prerequisite to petitioning the courts for a mandamus to compel his approval of the warrants. Chrestman v. Tompkins, 5 S. W. (2d) 257; Christensen v. Foster, 297 S. W. 657; Halbert v. Alford, 16 S. W. 814; Jackson v. Cook, 82 S. W. (2d) 154.

*Seb. F. Caldwell,* of Mount Pleasant, for defendant in error.

MR. JUDGE MARTIN delivered the opinion of the Commission of Appeals, Section B.

The parties to this suit will carry here their trial court designation.

Plaintiff was the holder of numerous school warrants issued by various common school districts of Titus County, and alleged to have been signed by a majority of the trustees of the issuing districts. The county superintendent of public schools refused to approve these warrants. A mandamus suit was filed against such officer to compel their approval. Plaintiff's petition alleged in part:

"That each of said warrants was issued by the drawer district and executed by the majority of trustees of such district in payment of a valid and subsisting obligation of such district incurred for the purchase of certain materials and supplies sold and delivered to such district by the said C. R. Jackson Company, being a series of charts required by the State Superintendent of Public Instructions as a prerequisite to receiving State aid by each of such districts; * * *

"The 26 warrants held by plaintiff of the districts as specified herein were by plaintiff properly presented to the defendant H. G. Smith, County Superintendent of Public Instruction of Titus County, Texas, for approval thereof by him as required by law, but the said defendant has failed and refused and still fails and refuses to approve such warrants without assigning any legal reason for his failure and refusal, * * *."

The petition failed to allege that the remedy of appeal was resorted to and exhausted before filing the present suit.

A general demurrer was sustained to this petition and plaintiff declining to amend judgment was entered for defendant, from which judgment an appeal was taken to the Texarkana Court of Civil Appeals. That court affirmed the trial court's judgment mainly upon the ground that said petition failed to allege that "the remedy of appeal to the County Board of School Trustees as provided by statute had been complied with and exhausted before applying to the court for mandamus." See 95 S. W. (2d) 713. A similar judgment involving precisely the same question, was reversed and remanded by the Fort Worth Court of Civil Appeals. See Jackson v. Cook, 82 S. W. (2d) 154. Both cases are before us for review.

Article 2693, R. S. 1925, provides in part: "The county superintendent shall approve all vouchers legally drawn against the school fund of his county."

Article 2686, as amended, reads in part: "All appeals from the decisions of the county superintendent of public instruction shall lie to the county board of school trustees."

■■ We are not able to agree with plaintiff's contention that the approval of the warrants in question was a purely ministerial, nondiscretionary act on the part of the official in question, so that no appeal from his "decision" was required, and therefore it was unnecessary to allege such appeal in a mandamus petition to compel his approval. It is elementary that mandamus will not lie, where the relator has another plain and adequate remedy in law. Equally well settled is the further proposition that in a proper suit of this character relator's petition must

show that he has exhausted his remedy of appeal as provided by statute. See 18 Tex. Jur., p. 918, Sec. 54, and authorities there collated.

■■ This case therefore is narrowed to a consideration of the question of the meaning and applicability of the language of the two statutes quoted above to the facts of this case. If the act of the county superintendent in refusing to approve the vouchers in question was in violation of any statute, or utterly lacking in statutory authority, it was void, and recourse to the courts was immediately available. State Line Consolidated School Dist. v. Farwell Ind. School Dist., 48 S. W. (2d) 616. If on the other hand he had by express or implied authority of statute any right of "decision," either for a valid or invalid reason, plaintiff had to appeal before resorting to a mandamus suit. Obviously the necessity for an appeal can not be made to depend upon whether or not his reason was legal or illegal, arbitrary or otherwise. The right of appeal is given to correct an invalid decision, and the word "decision" as used here is not to be understood in its strict judicial sense.

"This is a popular and not a technical or legal word. It is a very comprehensive term and has no fixed, legal meaning. * * * The term may be employed as referring to ministerial acts as well as to those that are judicial or of a judicial character." 18 C. J., pp. 27 and 28.

The clause "legally drawn against the school fund of his county" as used in Art. 2693, supra, undoubtedly confers upon him authority to decide as to the legality of the form of such vouchers. If we consider this language in connection with the "educational set-up" of each county, we have no doubt it goes further than this and authorizes an inquiry by him into the legality of the indebtedness represented by such voucher. We need inquire no further than whether or not he can pass his judgment on any one or more of the elements which go into the making of a "legally drawn" voucher, and from such "decide" its legality. We think his relation to the school fund in a limited sense is somewhat analogous to that of a county auditor with respect to county funds.

The conclusion that his said act of disapproval was not a void one follows necessary from the above.

■ The further question is pressed upon us that the purchase of the charts in question was made pursuant to a "ruling" of the State Superintendent of Public Instruction; that such a "ruling" under Arts. 2656 and 2657, R. S. 1925, and the authority of Bear v. Donna Ind. School Dist., 85 S. W. (2d) 797, has the

force and effect of a statute. The above articles and the cited case are not authority for the rather unusual contention that the act of a State Superintendent of Public Instruction in requiring a common school district to buy charts from the plaintiff company under penalty of losing State aid, had the force of a legislative command.

Rather, such action may have furnished the basis for a controversy over the legality of such purchase for reasons not deemed proper to state.

Finally we desire to state that our construction of the statutes, supra, seems to us to be in consonance with the legislative intent and wholesome desire to keep school controversies, as far as possible, out of the courts. Proper procedure for settlement of such controversies has been, we think, plainly provided by appeal to school authorities, and should be followed and exhausted before resort to legal proceedings in the courts.

Judgment Court of Civil Appeals is affirmed.

Opinion adopted by the Supreme Court October 20, 1937.

Rehearing overruled December 1, 1937.